IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JEREMIE SMITH,

                Plaintiff,

                                          Civ. Action No.
                                          9:03-CV-294 (DNH/DEP)

    vs.

GLENN S. GOORD, *et al.*

                Defendants.

_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

KOOB, MAGOOLAGHAN LAW FIRM    KATHERINE ROSENFELD, ESQ.
19 Fulton Street
Suite 408
New York, New York 10038

FOR DEFENDANTS:

HON. ELIOT SPITZER              DAVID B. ROBERTS, ESQ.
ATTORNEY GENERAL
State of New York
The Capitol
Albany, New York 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

                                            ORDER

      This action is brought by plaintiff Jeremie Smith, a former prison

inmate, against the New York State Department of Correctional Services ("DOCS") Commissioner and several other DOCS employees or affiliates, asserting civil rights claims under 42 U.S.C. § 1983. Plaintiff, who suffers from a potentially severe psychiatric condition, maintains that while in the custody of the DOCS he was sentenced to periods of disciplinary confinement in a special housing unit ("SHU") at the facility in which he was incarcerated, without due process; that the defendants were deliberately indifferent to his serious medical needs; and that while in custody, he experienced conditions tantamount to cruel and unusual punishment in violation of the Eighth Amendment.

Currently pending before the court is a discovery dispute centered around plaintiff's request for review of personnel files and other similar records of five of the named defendants, as well as other documents reflecting their training and job performance. Defendants resist production of those documents as constituting an unwarranted intrusion upon the privacy rights of those individuals, and request that before ordering disclosure the court conduct an *in camera* review of the records sought.

Having considered the arguments of the parties carefully I find that the defendants have failed to carry their burden of demonstrating grounds for

2

withholding the requested documents, notwithstanding their potential relevance to the claims and defenses in the action, and that the concerns associated with disclosure of those documents can be addressed adequately through the entry of an appropriate protective order.

I.   BACKGROUND

In 1996, at the age of twenty, the plaintiff was entrusted to the custody of the DOCS, where he remained until in or about July of 2002. During the time of his confinement plaintiff was assigned to the Clinton Correctional Facility ("Clinton"), although he was hospitalized on several occasions within the Central New York Psychiatric Center ("CNYPC") for treatment. That treatment was occasioned to address a serious mental illness, entailing a major depressive disorder and borderline personality disorder, with which the plaintiff has struggled throughout his adult life extending apparently back into adolescence.[1]

Among the issues raised in this action are the sufficiency of the treatment which plaintiff received for his disorders while at Clinton. Apparently, that facility contains both a Residential Crisis Treatment

---

[1] According to his complaint, plaintiff attempted suicide by hanging himself one week following his transfer from Clinton into the Coxsackie Correctional Facility. *See* Complaint (Dkt. No. 1) ¶ 26. There have been other reported efforts on plaintiff's part to kill or injure himself. *Id.* ¶¶ 27-28; *see also id.* ¶¶ 55-57, 62, 67.

Program ("RCTP"), a satellite unit operated at Clinton by the New York State Office of Mental Health ("OMH"), and an Intermediate Care Program ("ICP"), administered by the DOCS but jointly staffed by OMH and DOCS personnel. Plaintiff's complaint addresses the conditions to which he was subjected by the defendants, including those experienced while confined for disciplinary reasons at various times during the course of his imprisonment within the Clinton Special Housing Unit ("SHU").

## II.   DISCUSSION

At the heart of the pending dispute is a request by plaintiff's counsel for the production of personnel files and other records concerning various of the named defendants, including Kulwant Singh, who is identified by plaintiff as a Staff Psychologist in the Satellite Mental Health Unit at Clinton; Michael J. Phillips, a DOCS hearing officer; Maria Malendez, M.D., a Primary Psychiatrist in the Clinton Satellite Mental Health Unit; Wayne Crosier, listed as the Forensic Unit Chief for the OMH Satellite Unit at Clinton; and Captain John Kerry, another DOCS hearing officer.  Also sought are records related to training, performance, evaluation, and discipline of those employees.  In making his request for those documents plaintiff has demonstrated a willingness to enter into a confidentiality order, pursuant to Rule 26(c) of the

4

Federal Rules of Civil Procedure, and to permit redaction of certain personal information contained within the requested documents, including home addresses, family member identities, social security numbers, and personal health information.

The scope of discovery in a federal action is well-defined. Absent a court order expanding or limiting its permissible range, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party[.]"[2]  Fed. R. Civ. P. 26(b)(1). This standard is intentionally broad, and designed to permit "disclosure of relevant information in the interest of promoting the search for truth in a federal question case." *Marshall v. New York City Transit Auth.*, 84 Civ. 1033, 1984 WL 380, at *5 (S.D.N.Y. May 24, 1984) ("[T]he policy of full disclosure is particularly compelling in a case . . . where the plaintiff is alleging violation of his constitutional rights and seeking relief under the Civil Rights Act."); *see*

---

[2] In framing the issue now presented it is important to distinguish between admissibility and discoverability – two concepts which, though overlapping, are not co-extensive. *See Ismail v. Cohen,* No. 85 CIV. 0121, 1986 WL 2186, at *2 (S.D.N.Y. Feb. 10, 1986). The issue now before the court implicates discoverability, and does not call upon the court to rule upon the ultimate issue of whether the requested documents will be admissible at trial. *Mason v. Stock*, 869 F. Supp. 828, 835 (D. Kan. 1994) ("the pertinent issue at present is discoverability, not admissibility, and this judge will not be unwittingly drawn into making premature determinations that certain items are inadmissible").

5

*also Jones v. Goord*, No. 95 CIV. 8026, 2002 WL 1007614, at * 1 (S.D.N.Y. May 16, 2002). Significantly, the standard allows for discovery on a more expansive basis than under New York's disclosure rules. *Compare, e.g.* N.Y. Civil Practice Law and Rules § 3101 *with* Fed. R. Civ. P. 26(b); *see King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988).

The defendants do not appear to argue that there is nothing of potential relevance to the claims and defenses in this action contained within the requested files. Instead, they argue that any relevance of such materials is greatly overshadowed by the privacy concerns associated with the requested information.

When a protective order is sought and otherwise permissible discovery is resisted on the basis of a privilege, "[t]he party seeking to invoke the privilege bears the burden of justifying its application." *King,* 121 F.R.D. at 189 (citations omitted*)*. In support of their resistance to the discovery now sought, defendants have asserted protections under two state statutes, N.Y. Civil Rights Law § 50-a and N.Y. Public Officers Law § 96.[3] In a case such

---

[3] New York Civil Rights Law § 50-a provides, in relevant part, that all personnel records used to evaluate employee performance under the control of certain state agencies, including the corrections department, shall be considered confidential and not subject to inspection or review without the express written consent of such agency except as may be mandated by lawful court order. New York Public Officers Law § 96 similarly provides, in relevant part, that no agency may disclose any record

6

as this the applicability of a state law privilege is governed by Rule 501 of the Federal Rules of Evidence, which provides that

> [e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501; *see also Von Bulow v. Von Bulow,* 811 F.2d 136, 141 (2d Cir. 1987); *Marshall,* 1984 WL 380, at *5. Because plaintiff's claims in this action are grounded primarily in federal law, the two statutory provisions argued by the defendants as a basis for withholding the requested files are not directly applicable.[4]

This is not to say, however, that state rules designed to foster

---

or personal information unless such disclosure is pursuant to a written request by or the voluntary written consent of the subject.

[4] Plaintiff's eighth and ninth causes of action assert claims sounding in common law negligence, to which New York substantive law will apply. *See* First Amended Complaint (Dkt. No. 2) ¶¶ 122-30.

legitimate local interests, including protection of the privacy rights of state employees, should be completely disregarded by a federal court; such state rules may properly be invoked in an action such as this provided that in doing so the court does no injustice to overarching considerations, including the paramount importance of allowing access by federal civil rights litigants to information needed to press their claims, and assuming additionally that applying the state rule does not denigrate any other federal substantive or procedural policy.[5]  *King*, 121 F.R.D. at 187 (citing *Lara v. Board of Ed.*, 74 F.R.D. 565, 576 (E.D.N.Y. 1977)); *Marshall,* 1984 WL 380 at *5.

One factor worthy of consideration is whether federal law also recognizes and protects the interests giving rise to the state law protections being raised in opposition to the discovery requests at issue.  I note that the

---

[5]  Courts have variously characterized the threshold showing which must be made by a defendant when seeking to resist disclosure on a basis such as that now at issue.  In *King v. Conde*, Judge Weinstein fashioned a rigid, judge-made procedure to be followed in all Eastern District of New York cases when addressing such matters.  121 F.R.D. at 188-90.  Under that procedure, to assert a claim of privilege against disclosure of such personnel records, the defendants must submit a written affidavit or declaration from someone other than their attorney explaining in detail the basis for the claim of confidentiality and explaining "how the materials at issue have been generated or collected; how they have been kept confidential; what specific interests (e.g. of the police officers, of law enforcement, or of public concern) would be injured by disclosure to plaintiff, to plaintiff's attorney, and to the public; and the projected severity of each such injury."  *Id.* at 189.  Courts in other districts have not required such a showing, and indeed at least one judicial officer in this circuit has expressed his respectful disagreement with Judge Weinstein's rigid requirements.  *See Martin v. Lamb*, 122 F.R.D. 143, 147 n.1 (W.D.N.Y. 1988).

courts considering the question in cases such as this have disagreed as to whether a federal analog to N.Y. Civil Rights Law § 50-a exists. *Compare Melendez v. Greiner*, No. 01 Civ. 07888, 2003 WL 22434101, at *5 (S.D.N.Y. Oct. 23, 2003) and *King*, 121 F.R.D. at 187 (finding no federal counterpart to section 50-a) *with Marshall*, 1984 WL 380, at *6 (finding the existence of comparable federal statutes protecting the personal privacy of government employees). I have therefore looked beyond this potential parallel to other relevant factors which together inform the analysis to be undertaken, including the breadth of discovery envisioned under the governing federal discovery rules.

As one potential resolution of the instant dispute, defendants have urged the court to engage in an *in camera* review of the records now sought to determine whether the relevance of those records is overshadowed by applicable privacy considerations. It is true, as defendants assert, that this is a procedure which has been utilized by judges of this and other courts. *See, e.g., R.T. v. Gross*, No. 02-CV-159 (TJM/RFT), slip op. at 1 (N.D.N.Y. Oct. 22, 2003); *Reitano v. Merritt*, No. 99-CV-486 (FJS/GLS), slip op. at 6 (N.D.N.Y. Feb. 9, 2000); *Martin,* 122 F.R.D. at 147-48; *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 127 (N.D.N.Y. 1984) (Foley, J.); *Marshall*, No. 84

9

Civ. 1033, 1984 WL 380, at *7. Moreover, there is certain facial appeal to this suggested course. Given that records, including personnel files, of the nature now at issue are sought in many civil rights actions brought under 42 U.S.C. § 1983, however, adoption of a practice of routinely conducting an *in camera* inspection whenever the specter of N.Y. Civil Rights Law § 50-a is raised would potentially cast a considerable burden on the court. Another court, noting this burden, rejected a similar request for *in camera* inspection of records, writing:

> This case is a prime example of why it should be incumbent on the attorneys to make a good faith effort to resolve as much of this type of dispute as possible before resorting to the court. In this case, defendants are asking the court to comb through seven personnel files and seven internal affairs histories which defense counsel has characterized as "extensive and voluminous documents and materials." There is no doubt that there will be material in at least the personnel files that plaintiffs may not need nor want. It is a great burden for the court, and consumes a great deal of the court's time, to go through each of these files only to be looking at medical histories, emergency contact forms, payroll plans[,] etc. This is the type of review the attorneys should be conducting long before approaching the court. It is certainly not fair to the taxpayers of this country to have to pay the costs and expenditures of the federal courts for work that attorneys should be doing.

*Hampton v. City of San Diego*, 147 F.R.D. 227, 229-30 (S.D. Cal. 1993); *see*

*also Melendez*, 2003 WL 22434101, at *5; *Mason,* 869 F. Supp. at 835-36 (similarly declining the parties' invitation to engage in an *in camera* review).

This is not to say that *in camera* inspection is never warranted or appropriate. In my view, however, such an inspection by the court should not be routinely conducted, and is no substitute to full disclosure to, and review of the disputed materials by, a litigant's counsel, who is best positioned to know the party's strategy and assess the relevance *vel non* of the information contained within the disputed materials. As one court has noted regarding this perceived handicap,

> the court must . . . determine whether items in the personnel files and internal affairs file do not fall within the exceedingly broad scope of permissible discovery under Rule 26. This determination is made difficult by the court's relative lack of familiarity with the case. This court is being asked to decide what information within a voluminous group of files is conceivably relevant to plaintiff's claims when the court is not sure what plaintiff's arguments and litigation strategies in support of his claims are going to be.

*Mason,* 869 F. Supp. at 835 (internal citations omitted); *see also Everitt v. Brezzel*, 750 F. Supp. 1063, 1067 (D. Col. 1990) ("[C]ourts are rarely, if ever, in the best position to evaluate . . . the importance of the information sought to the plaintiff's case."). In this instance, I have not been presented with

11

circumstances which convince me that *in camera* review, as opposed to disclosure under strict conditions to protect the legitimate privacy interests of the defendants, is the more appropriate measure.

Turning to the specifics of the dispute now before the court, considered in the context of the principles articulated above, I find that the documents requested are potentially relevant, the requests for their production is reasonably calculated to lead to the discovery of admissible evidence, and the privacy concerns at issue do not override the perceived potential relevance. The requested files may, for example, contain evidence which would tend to establish that the defendants committed the constitutional and common law violations alleged, or negating their entitlement to qualified immunity which they each claim in defense of plaintiff's claims. Those files may also contain evidence tending to establish or suggesting that certain of the defendants, including notably defendants Crozier and Stone, were negligent in the performance of their supervisory responsibilities, including in the hiring, training and supervision of the other health care providers at Clinton, as alleged in plaintiff's amended complaint. *See* Amended Complaint (Dkt. No. 2) ¶¶ 122-26.

Based upon the foregoing I find that the plaintiffs are entitled to

discovery of the personnel files and other records now sought. In making this finding I am not unsympathetic to the privacy concerns at issue and the need to take particular care not to endanger the welfare of DOCS employees and their families.[6] *See Inmates of Unit 14,* 102 F.R.D. at 129. Accordingly, I will impose stringent conditions upon the disclosure of the materials being disclosed under this order, with confidence that as an officer of the court, plaintiff's counsel will abide by these restrictions and take prudent measures to ensure that the intrusion into the privacy of the defendants is kept to an absolute minimum.

IV.   SUMMARY AND ORDER

To be sure, defendants in civil rights actions – particularly those brought by inmates in state correctional facilities – possess legitimate privacy interests which militate against indiscriminate disclosure of inherently personal information concerning those employees and their families. Nonetheless, a plaintiff in a federal civil rights action possesses an equally compelling entitlement to discover relevant information necessary to ensure that through the adversarial process the truth emerges, and justice is done.

---

[6] For this reason the court would undoubtedly take a different view in a situation where an unrepresented inmate was seeking the production of personnel files of DOCS employees.

13

...
...

When these competing considerations are presented, the mere incantation of N.Y. Civil Rights Law § 50-a alone does not provide a basis to withhold what otherwise appears to be discoverable and potentially highly relevant information from the plaintiff. Instead, those inherently conflicting considerations must be weighed, and a balance which seeks to accommodate both concerns struck.

In this instance, defendants have failed to satisfy their burden of establishing grounds for withholding otherwise relevant information from the plaintiff on the basis of primary concerns articulated. Similarly, nothing contained within the parties' submissions suggests that the court should exercise its discretion to engage in *in camera* review of what appear to be relatively routine personnel records to determine their discoverability.

Based upon the foregoing it is hereby

ORDERED as follows:

1) Defendants' motion for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure is DENIED, and plaintiff's cross-motion for an order directing the production of personnel, training and performance records of defendants Melendez, Singh, Carey, Crosier and Phillips (plaintiff's document discovery request numbers 1 and 2) is

14

GRANTED.

   2)   Defendants are directed to produce those records within twenty (20) days of the date of this order at the DOCS offices where those records are maintained or, alternatively, at the office of defendants' counsel. Thereafter, plaintiff may choose to request photocopies of all or some of the records produced, at his expense.

   3)   This requirement of production is specifically conditioned upon the prior entry of a protective order, either on stipulation of the parties or by order of the court, limiting access to the information set forth in the records being produced, including any personally identifiable information, and restricting the dissemination of such information to counsel and counsel's agents, to the exclusion of the plaintiff without the entry of a court order lifting this restriction. This order is also conditioned upon the redaction of any unnecessary and sensitive information concerning the employees in question and their families, including addresses, social security numbers, names of family members, and medical and insurance information.

4)   The clerk is directed to promptly forward copies of this order to counsel for the parties electronically.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   April 29, 2004
        Syracuse, NY

G:\prisoner\2003\03-CV-0294\order2.wpd